1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BIG FISH GAMES, INC., a Washington corporation, | No. C07-0718 JCC |
| Plaintiff, | **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |
| v. | |
| iWIN, INC., a Delaware corporation with its principal place of business in San Francisco, California; CHARLES J. WOLF, JR., CEO of iWin, a California resident; GREGORY J. LANZ, a California resident; and VINNY CARRELLA, a California resident; and the marital communities of all individual defendants; | **JURY DEMAND** |
| Defendants. | |

Plaintiff Big Fish Games, Inc. ("BFG") brings this action against Defendants iWin, Inc.

("iWin"), Charles ("CJ") Wolf, Gregory J. Lanz, and Vinny Carrella (collectively "Defendants")

and alleges as follows:

## NATURE OF THE ACTION

This case involves Defendants' intentional, ongoing, and egregious misappropriation of

Plaintiff BFG's most sensitive and competitively valuable confidential and trade secret

COMPLAINT (NO. C07-0718) – 1

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

information through repeated unlawful computer intrusions, and Defendants' use of such information to compete unfairly in the emerging industry of "casual" Internet games.

Plaintiff BFG is the world's fastest-growing developer, publisher, distributor, and retailer of family-friendly "casual" Internet games, and one of the largest.  Defendant iWin, a competitor of BFG's, has not achieved comparable commercial success.  Having failed to compete successfully through legitimate means, iWin, with the active participation of the other Defendants, including its CEO, CJ Wolf, repeatedly obtained unauthorized access into a secure computer network that contained highly confidential business and trade secret information belonging to iWin's competitors, including BFG.  iWin then viewed, downloaded, and used BFG's proprietary and trade secret information to inform and modify iWin's own business strategies and game offerings, to seek to achieve by theft the competitive advantage that iWin could not achieve by hard work and talent.  These computer intrusions occurred dozens of times over a period of several months.  Defendants accomplished their misappropriation by using stolen and/or counterfeit login IDs and passwords to covertly gain unauthorized access to a computer system maintained by a third party, Macrovision Corporation ("Macrovision"), with which BFG had contracted for ecommerce transaction and secure data storage services.

The information Defendants accessed without authorization includes confidential and trade secret BFG data regarding both aggregate and individual data pertaining to game unit sales, gross and net game revenue, game download units, conversion rates (which reflect the percentage of Web visitors that try a game and who ultimately purchase a particular game, an indicator of a game's success), publisher payment information, affiliate code information (which reflects the marketing initiatives and mechanisms that drive the sales), customer email addresses, customer mailing addresses, and method of purchase (subscription or individual transactions).  The confidential and trade secret information to which iWin gained unauthorized access, including email and physical addresses of BFG's customers, also included one of BFG's most precious assets, its customer list.  (On information and belief, iWin did not gain access to BFG

COMPLAINT (NO. C07-0718) – 2

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

customers' social security numbers or usable customer financial information.)  Additionally, iWin gained tremendous competitive insight through the study of other trade secret data such as BFG's marketing affiliate codes for each transaction (which indicate the customer acquisition and customer retention initiatives  behind BFG's sales), the individual performance of all of the over 900 third party games BFG sold on its site during this period (which gave iWin a roadmap for which developers to sign both distribution and publishing agreements with and which games to launch on its own site), what new game genres were emerging with the strongest potential growth characteristics (which gave iWin a basis for their own internal game development strategy and Web site game genre and game type offering strategy) and the tremendous growth of BFG's subscription program over time (iWin subsequently launched a competitive subscription service).  BFG learned that this BFG confidential and trade secret information—the possession and proper analysis of which are a major factor conferring competitive advantage within the industry—had been accessed without authorization by Defendants on dozens of occasions, beginning as long ago as 2005.  iWin's senior management not only knew of and approved these computer intrusions and data theft, its CEO, Defendant CJ Wolf, actively took part in them.

Defendants engaged in this misconduct for the sole purpose of enhancing iWin's competitive position and market share in the casual games industry.  Defendants have admitted that some of their purposes in reviewing this confidential data were to gain a competitive advantage by using the information, among other things, (1) to evaluate the relative popularity of various games; (2) to adjust iWin's own game offerings (which iWin accomplished by adjusting which games to launch and which games to accelerate the release of on its own Web site, by analysis of the best selling games on BFG's site, and by delaying or not releasing the games that were not selling well on BFG's site); (3) to accelerate iWin's release of popular games; (4) to gauge which developers iWin should engage to develop games for iWin's site; and (5) to decide which games iWin should develop itself.  BFG's confidential information also afforded iWin an

COMPLAINT (NO. C07-0718) – 3

unfair competitive advantage by, among other things, giving iWin unauthorized access to proprietary data sufficient to permit it to measure the relative effectiveness of particular business and marketing strategies.  Indeed, shortly after the misappropriation began in late 2005, throughout 2006 and as late as 2007, iWin demonstrably altered its business focus, marketing tactics, game offerings, pricing strategies, development activities, publishing efforts, and other aspects of its business strategy to take advantage of BFG's superior release scheduling, sales performance data, marketing methods, and business practices within the industry.  iWin continues to trade off of and profit from this stolen information in order to compete unfairly today.

In April 2007, BFG first learned of Defendants' intrusions and theft of BFG's data and brings this action to remedy iWin's systematic theft of BFG's most sensitive and competitively valuable business information.  BFG reserves the right to amend this Complaint to add additional claims and parties as additional information comes to light.

## PARTIES

1.      Plaintiff Big Fish Games, Inc. is a Washington corporation with its principal place of business in Seattle, Washington.

2.      Defendant iWin, Inc. is a Delaware corporation with its principal place of business in San Francisco, California.

3.      Defendant CJ Wolf is the CEO of Defendant iWin and, on information and belief, resides in Piedmont, California.

4.      Defendant Gregory J. Lanz is an iWin employee who, on information and belief, resides in San Carlos, California.

5.      Defendant Vinny Carrella is a former iWin employee who, on information and belief, resides in San Rafael, California.

COMPLAINT (NO. C07-0718) – 4

64693-0003/LEGAL13225711.1

## JURISDICTION AND VENUE

6.     The Court has subject matter jurisdiction over BFG's federal Computer Fraud and Abuse Act claim pursuant to 28 U.S.C. § 1331 and over BFG's Racketeer Influenced and Corrupt Organizations Act claim pursuant to 18 U.S.C. § 1964 and 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over the claims that arise under Washington law pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.  In addition, the Court has jurisdiction over BFG's claims that arise under Washington law pursuant to 28 U.S.C. § 1332 because this action involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.     The Court has personal jurisdiction over Defendants because iWin conducts substantial business in, and directed to, Washington State; Defendants committed numerous tortious and illegal acts expressly aimed at a Washington resident; and Defendants committed numerous tortious and illegal acts with knowledge that such acts would cause harm in Washington State.

8.     Venue is proper in the Court pursuant to 28 U.S.C. § 1391 because Defendant iWin conducts business in this judicial district, and because a substantial part of the events or omissions giving rise to BFG's claims occurred and are continuing to occur in this judicial district.

## FACTUAL ALLEGATIONS

### *Plaintiff Big Fish Games*

9.     BFG was founded in Seattle, Washington, in 2002.  Since then, BFG has grown to over 160 employees and has become a world-leading developer, publisher, distributor and retailer of family-friendly games in the "casual" games sector of the computer games industry. "Casual" games are designed to be immediately accessible and playable by users with little or no prior games experience.  The casual games industry generates significant revenue: analysts

COMPLAINT (NO. C07-0718) – 5

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

project that this segment of the computer games industry will generate more than $2 billion in sales by 2008.

10.     BFG is one of the largest and fastest-growing companies in the highly competitive casual games market.  BFG offers one of the largest game catalogs on the Internet, has more than 25 million monthly users throughout the network of sites it operates, and has contracted with a number of nationally recognized distribution partners.

11.     One of the reasons for BFG's rapid success is its sophisticated analysis of its substantial marketing and sales data to acquire and retain customers.  BFG's confidential and proprietary sales, revenue, and customer-related data are among BFG's most valuable assets.

### *Defendants iWin, Wolf, Lanz, and Carrella*

12.     On information and belief, iWin was founded in 2001 as Next Game, Inc.  Its original objective was to build "a skill-based games community."  iWin now acts as a developer, publisher, and provider of casual games.  iWin is now a direct competitor of BFG's.  iWin is also a contract partner of BFG's; the two companies have entered into mutual software distribution agreements.  Defendant CJ Wolf has acted as iWin's CEO since at least 2005.  Defendant Lanz joined iWin in 2005, directly following his employment at Macrovision, the data storage company BFG contracted with for its ostensibly secure ecommerce transactions and data storage.  Defendant Carrella was an employee of iWin until March 2007, when the activities that are the subject of this litigation were uncovered.

13.     iWin, until recently, has employed different marketing and business strategies than BFG (for example, iWin focused on in-browser games that have either an advertising or "games of skill for money" business model; developed very few "downloadable" games; expressed an aversion to any "subscription"-type service; and had not pursued the children's games market, a robust and growing portion of BFG's market).  iWin has not enjoyed the same level of commercial success as BFG.

COMPLAINT (NO. C07-0718) – 6

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*__Macrovision__*

14.    Management and analysis of confidential sales and related data are fundamental to the successful operation of BFG's business.  In 2005, BFG entered into a Web services agreement with Trymedia Systems, Inc. (later acquired by Macrovision Corporation; references herein to "Macrovision" refer to both Macrovision Corporation and Trymedia, which is now a division of Macrovision that hosts its Online Reporting System) for digital rights management software and secure ecommerce transaction services used to manage the purchase and use of casual games.  Macrovision completes ecommerce transactions for BFG and purports to store BFG's related confidential and proprietary sales, marketing, and certain customer information securely on Macrovision servers.  Macrovision employs password-protected login procedures to restrict access to BFG information only to BFG and certain Macrovision employees.

15.    BFG takes appropriate measures to ensure that the confidential and trade secret status of its confidential business data remains intact.  This proprietary sales and customer information is stored on Macrovision's Online Reporting System ("ORS").  The ORS stores, among other data, statistics on BFG game sales units, downloads, sales revenue, conversion rates (the percentage of Web visitors who ultimately purchase a particular game), marketing affiliate codes, and the email and physical addresses and transactional order history of BFG's hundreds of thousands of online customers.  On information and belief, similar information relating to other iWin competitors also is stored on Macrovision's ORS.  On information and belief, neither social security numbers nor complete credit card numbers are stored on the ORS.

16.    iWin was a former client of Macrovision's ecommerce and data storage services and was very well versed in the extent of the data available and of the specific capabilities of this system to analyze historical sales and customer data.  The confidential and proprietary business information that is stored on Macrovision's ORS can be sorted by game title, by date, by marketing code (showing type of marketing campaign), by time period, and by purchase type.  Reports generated using the ORS also may be run by marketing code, giving insight into how

COMPLAINT (NO. C07-0718) – 7

BFG has spent its marketing dollars to both attract new customers and to sell more games to existing customers. Reports may also display trends of any data requested over time, via extensive graphing, showing growth rates, impact of special promotions, success of subscription sales versus single transaction sales, and the key drivers of growth by marketing code. Additionally, BFG's most valuable asset, their complete customer base, is exposed through this tool, including their email address, physical address, purchase history, game preferences, and activity level. These reports and detailed customer information can be exported in any format for import into an external database. All of this information was exposed to Defendants when they gained unauthorized access to Macrovision's secure computer network and Defendants have admitted downloading BFG data to their own computer systems.

### *Defendants' Intentional Misappropriation of Key BFG Customer and Sales Data*

17. Macrovision employed Defendant Gregory Lanz prior to 2005. Mr. Lanz left Macrovision in 2005 and immediately took a position with Defendant iWin.

18. Just prior to leaving Macrovision, Mr. Lanz copied onto an iWin computer substantial data and files, including the following Macrovision files and proprietary information belonging to iWin's competitors, including BFG:

- Several hundred contracts;

- Emails from members of the Macrovision/Trymedia sales team, as well as comprehensive Outlook email files;

- Data regarding game unit sales, revenues, and conversion rate data for BFG and other clients of Macrovision; and

- End user data, including names and emails of users who had purchased games.

19. Also before departing Macrovision, Mr. Lanz misappropriated the login ID and password of the Macrovision sales manager responsible for Macrovision's account with BFG. This login ID and password enabled access to the Macrovision ORS system. Mr. Lanz used these to create nine other false IDs and passwords, which he then stored on an iWin laptop

COMPLAINT (NO. C07-0718) – 8

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

computer, which he intended to use, and did use and share with others, after he began work at iWin.

20.     Over the following 18 months, until his actions were discovered, Mr. Lanz used the counterfeit login IDs and passwords he created to gain unauthorized access to Macrovision's ORS and the confidential business data it contained.  On a regular basis, from his iWin work computer, Mr. Lanz ran targeted searches in Macrovision's ORS to retrieve highly sensitive, confidential, proprietary, and extremely valuable information belonging to BFG and iWin's other competitors.  Mr. Lanz printed dozens of reports reflecting this data.

21.     Mr. Lanz discussed his activities with other iWin employees.  Sometime in 2006, he provided them with unauthorized access to Macrovision's ORS.  Specifically, Mr. Lanz provided some of the counterfeit login IDs he created to CJ Wolf, iWin's CEO, and Vinny Carrella, Developer Relations and Game Producer at iWin.

22.     Both Mr. Wolf and Mr. Carrella joined Mr. Lanz in using iWin computers to gain unauthorized access, view, and retrieve BFG's highly proprietary and competitively valuable confidential information, including detailed data regarding BFG's customers, sales, revenue, and download and conversion rates.  Mr. Wolf stored some of this information on his iWin laptop computer.  In total, at least three iWin laptop computers were used to store BFG proprietary and trade secret data:  Mr. Wolf's, Mr. Lanz's, and Mr. Carrella's.

23.     Mr. Wolf and Mr. Lanz both used the Macrovision ORS information to gain a competitive advantage for iWin, by, for example, evaluating the relative performance of different games and game data and prioritizing games in the iWin game release queue.  Defendants' unauthorized access to BFG's proprietary information permitted iWin to identify and release many of the best-selling titles on BFG's site that had not previously been available on iWin.com – and gave Defendants the information necessary to decide to delay releasing, or not release at all, games that were not performing well on BFG's site.

COMPLAINT (NO. C07-0718) – 9

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

24.     In addition, at the same time he was reviewing BFG proprietary sales, revenue, net revenue, and game data, iWin CEO Wolf insisted on renegotiating, to iWin's benefit, the minimum per unit game price term in the parties' mutual Software Distribution Agreements.  The proprietary BFG sales information secretly misappropriated by Defendant Wolf during this period informed Wolf's position in these negotiations, which culminated in the execution of an amendment to the Software Distribution Agreements.

25.     Defendant iWin and Defendant Wolf proceeded under false pretenses and impliedly misrepresented their status, knowledge, and positions during the negotiations of the Software Distribution Agreements.  BFG reasonably relied on Defendants' apparent honesty and good faith in the course of these negotiations, and was fraudulently induced into entering into the agreements by Defendants' material misrepresentations and omissions.

### BFG's Discovery of Defendants' Wrongful Conduct

26.     In early March 2007, Macrovision learned that its ORS system had been breached.  After conducting an investigation, Macrovision was able to pinpoint and to disable the counterfeit login IDs, and to identify iWin, and ultimately Mr. Lanz, Mr. Wolf, and Mr. Carrella, as the sources of the unauthorized access.

27.     In mid-April 2007, Macrovision notified BFG of iWin's unauthorized access to the Macrovision ORS.  Specifically, Macrovision informed BFG that at least three iWin employees—Mr. Lanz, Mr. Wolf and Mr. Carrella—had repeatedly, between 2005 and 2007, accessed without authorization, at a minimum, confidential customer, sales, revenue, download and conversion rate data for BFG's game sales.  Much of this information was also copied or downloaded by Defendants.

28.     BFG is informed and believes that Defendants Lanz, Wolf, and Carrella, operating on behalf of iWin, used, and are continuing to use, the confidential information they stole from Macrovision's ORS to compete illegally with BFG.  Specifically, on information and belief, Defendants Lanz and Wolf are using the trade secrets they stole from BFG to attempt to

COMPLAINT (NO. C07-0718) – 10

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

bolster iWin's position in the games market and unfairly narrow BFG's competitive advantage. Using BFG's confidential and proprietary sales records, iWin has rearranged its own launch schedule to prioritize games that were successful sellers for BFG and has identified and begun to distribute new games shown to be lucrative for BFG.  On information and belief, iWin is also using the trade secrets and confidential information it stole from BFG to develop copycat marketing techniques, including a subscription program that it had previously rejected but subsequently embraced by initially heavily discounting all games in preparation for a discount subscription program it unveiled in April 2007 following the deployment and rapid growth of such a program by BFG.  On information and belief, iWin is also using BFG's confidential customer information to increase its own customer base.

29.     To date, iWin has not returned BFG's confidential and proprietary information to BFG.  It remains unclear whether Mr. Carrella maintained possession of any such information after he was terminated from iWin, or whether Defendants preserved the data resident on Mr. Carrella's laptop.  Defendants continued to access, without authorization, BFG's confidential and proprietary business information at least until their actions were discovered.

## CAUSES OF ACTION

### First Claim for Relief:
### Violation of the Federal Computer Fraud and Abuse Act,
### 18 U.S.C. § 1030(a)(2) and § 1030(g)

30.     BFG realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 29 above.

31.     BFG is informed and believes that, beginning in or about 2005, Defendants used stolen and misappropriated login IDs and passwords and thereby intentionally accessed, without authorization or exceeding authorization, a protected computer, i.e., Macrovision's computer server(s) and ORS.

Perkins Coie LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

32.     Defendants, through this unauthorized and illegal access, obtained valuable confidential and proprietary business data, including  BFG's customer information and records of sales, revenue, downloads and conversion rates for its games inventory.

33.     The computers and servers that contain Macrovision's ORS, which Defendants accessed without authorization, provide remote access to customers from all 50 states and to users in any country with Internet access, and therefore are used in interstate and foreign commerce and communication, and Defendants' conduct involved interstate commerce and communication.

34.     As a result of Defendants' actions, BFG has suffered loss aggregating to more than $5,000 in value during each relevant one-year period, in an amount to be proved at trial.

## Second Claim for Relief:
### Violation of the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4) and § 1030(g)

35.     BFG realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 34 above.

36.     Beginning in or about 2005, Defendants, without authorization or exceeding authorization, accessed, knowingly and with intent to defraud BFG, a protected computer, i.e., Macrovision's computer server(s) and ORS, and obtained BFG's confidential and proprietary business data.

37.     Defendants used this unlawful access to further their intended fraud, for example, by using BFG's misappropriated confidential and proprietary business data covertly, in negotiating with BFG a key amendment to Software Distribution Agreements, and by representing at times that information at the disposal of defendants was based on "publicly available information."

38.     Defendants, through their unauthorized computer access and scheme to defraud, obtained financial advantage far in excess of $5,000.

COMPLAINT (NO. C07-0718) – 12

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

39.     The computers and servers that contain Macrovision's ORS, which Defendants accessed without authorization, are used in interstate and foreign commerce and communication, and Defendants' conduct involved interstate commerce and communication.

40.     As a result of Defendants' actions, BFG has suffered loss aggregating to more than $5,000 in value during each relevant one-year period, in an amount to be proved at trial.

<u>**Third Claim for Relief**</u>**:**
**Violation of the Federal Computer Fraud and Abuse Act,**
**18 U.S.C. § 1030(a)(5) and § 1030(g)**

41.     BFG realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 40 above.

42.     By the acts alleged above, beginning in or about 2005, Defendants knowingly caused the transmission of information, code, or a command, namely stolen and misappropriated login IDs and passwords, and as a result of such transmission, intentionally caused damage without authorization to a protected computer by acts that included the unlawful accessing and copying of private data.

43.     The computers and servers that contain Macrovision's ORS, which Defendants accessed without authorization, are used in interstate and foreign commerce and communication, and Defendants' conduct involved interstate commerce and communication.

44.     As a result of Defendants' actions, BFG has suffered loss aggregating to more than $5,000 in value during each relevant one-year period, in an amount to be proved at trial.

<u>**Fourth Claim for Relief**</u>**:**
**Violation of Racketeer Influenced and Corrupt Organizations Act,**
**18 U.S.C. § 1962(c) – iWin as the Enterprise**

45.     BFG realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 44 above.

46.     At all times relevant hereto, iWin was an enterprise within the meaning of 18 U.S.C. § 1961(4) and was engaged in, and its activities affected, interstate and foreign commerce.

COMPLAINT (NO. C07-0718) – 13

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

47.     At all times relevant hereto, Defendants Wolf, Lanz, and Carrella were employed by or otherwise associated with iWin.

48.     Defendants wrongfully conducted or participated, directly or indirectly, in the conduct of iWin's affairs through a pattern of racketeering activity.  In connection therewith, Defendants committed the following racketeering acts within the meaning of 18 U.S.C. § 1961(1):

Fraud and Related Activity in Connection With Access Devices.  Defendants knowingly and with intent to defraud produced, repeatedly used, and trafficked in one or more unauthorized and counterfeit access devices in violation of 18 U.S.C. § 1029, in that, as described above and under false pretenses, they produced, repeatedly used, and transferred alias login IDs and passwords to improperly gain unauthorized access to the Macrovision ORS at a time when they knew such access was unauthorized and forbidden. By means of a pattern of such unauthorized access, Defendants obtained confidential and proprietary business data belonging to BFG of a value well in excess of $1,000 during any one-year period.  These offenses affected and will continue to affect interstate and foreign commerce, as they have materially improved Defendant iWin's competitive position in the casual games market and materially and adversely affected BFG's competitive position.  They have also materially and adversely affected BFG in the terms it was able to negotiate in its Software Distribution Agreements with Defendant iWin.

49.     As a proximate result of Defendants' violation of 18 U.S.C. § 1962(c), BFG has sustained damage to its business and property, in an amount to be proved at trial.

**Fifth Claim for Relief:**
**Violation of Racketeer Influenced and Corrupt Organizations Act,**
**18 U.S.C. § 1962(c) – Association-in-Fact as the Enterprise**

50.     BFG realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 49 above.

COMPLAINT (NO. C07-0718) – 14

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

51.     At all times relevant hereto, Defendants iWin, Wolf, Lanz, and Carrella formed an association-in-fact that was an enterprise within the meaning of 18 U.S.C. § 1961(4), which was engaged in, and had activities affecting, interstate and foreign commerce.

52.     At all times relevant hereto, Defendants Wolf, Lanz, and Carrella were employed by or otherwise associated with iWin.

53.     Defendants wrongfully conducted or participated, directly or indirectly, in the conduct of the affairs of their association-in-fact through a pattern of racketeering activity.  In connection therewith, Defendants committed the following racketeering acts within the meaning of 18 U.S.C. § 1961(1):

    Fraud and Related Activity in Connection With Access Devices.  Defendants knowingly
    and with intent to defraud produced, repeatedly used, and trafficked in one or more
    unauthorized and counterfeit access devices in violation of 18 U.S.C. § 1029, in that, as
    described above and under false pretenses, they produced, repeatedly used, and
    transferred alias login IDs and passwords to improperly gain unauthorized access to the
    Macrovision ORS at a time when they knew such access was unauthorized and forbidden.
    By means of a pattern of such unauthorized access, Defendants obtained confidential and
    proprietary business data belonging to BFG of a value well in excess of $1,000 during
    any one-year period.  These offenses affected and will continue to affect interstate and
    foreign commerce, as they have materially improved Defendant iWin's competitive
    position in the casual games market and materially and adversely affected BFG's
    competitive position.  They have also materially and adversely affected BFG in the terms
    it was able to negotiate in the Software Distribution Agreements.

54.     As a proximate result of Defendants' violation of 18 U.S.C. § 1962(c), BFG has sustained damage to its business and property, in an amount to be proved at trial.

**Sixth Claim for Relief:**
**Violation of Washington Uniform Trade Secrets Act,**
**Chapter RCW 19.108,** *et seq.*

COMPLAINT (NO. C07-0718) – 15

55.     BFG realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 54 above.

56.     The Washington Uniform Trade Secrets Act (the "UTSA"), at RCW 19.108.010(4), defines a "trade secret" as "information, including a formula, pattern, compilation, program, device, method, technique, or process that:

      (a)    Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

      (b)    Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

57.     BFG's business data, consisting of highly confidential customer information and records of sales, revenues, and download and conversion rates, as collected and stored on Macrovision's ORS, are "trade secrets" as defined by the UTSA.  Specifically, BFG's business data derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and it is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

58.     BFG has invested substantial time and money, and has made proactive and reasonable efforts under the circumstances, to maintain the secrecy of BFG's trade secrets from disclosure to third parties and to BFG's competitors.

59.     Defendants willfully and maliciously misappropriated BFG's trade secrets by using fraudulent alias login IDs to illegally access Macrovision's ORS and retrieve BFG's business data.

60.     As a result of Defendants' willful and malicious misappropriation of BFG's trade secrets, BFG has suffered damages in an amount to be proved at trial.

COMPLAINT (NO. C07-0718) – 16

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

61.     As an additional result of Defendants' willful and malicious misappropriation, Defendants have been unjustly enriched by using BFG's trade secrets in furtherance of their business activities, and accordingly, pursuant to RCW 19.108.030, Defendants should disgorge all profits resulting therefrom.

62.     In addition, due to the breach of customer confidentiality and loss of proprietary customer data resulting from Defendants' misappropriation, BFG has suffered and will continue to suffer losses and irreparable injury to its business reputation and goodwill in amounts not yet ascertained.  BFG's remedy at law, while part of a just resolution of this matter, is not itself adequate to compensate it for injuries inflicted and threatened by Defendants.  Accordingly, pursuant to RCW 19.108.020, BFG is entitled to injunctive relief.

63.     Because Defendants' misappropriation of BFG's trade secrets was willful and malicious, BFG is also entitled to exemplary damages, attorneys' fees, and costs of suit pursuant to RCW 19.108.030-040.

**<u>Seventh Claim for Relief</u>:**
**Violation of Washington Criminal Profiteering Act,**
**Chapter RCW 9A.82**

64.     BFG realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 63 above.

65.     Defendants engaged in acts of criminal profiteering in that Defendants, by color or aid of deception, wrongfully obtained property of BFG with the intent to deprive BFG of such property, all in felony violation of RCW 9A.56.030 (Theft in the First Degree).  Defendants committed such acts for their own pecuniary gain.

66.     The acts of criminal profiteering alleged above were part of a pattern of criminal profiteering in that Defendants engaged in numerous such acts over an extended period of time which (a) were not isolated events and (b) had the same intent, results, accomplices, principals, victim, and methods of commission and were otherwise interrelated.

COMPLAINT (NO. C07-0718) – 17

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

67.     As a direct and proximate result of Defendants' acts of criminal profiteering described above, BFG has sustained injury to its business and property, in an amount to be proved at trial.

### Eighth Claim for Relief:
**Violation of Washington Unfair Business Practices Act,
RCW 19.86.020 *et seq.***

68.     BFG realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 67 above.

69.     Defendants' activities as alleged above were willful and malicious, and constitute unfair or deceptive acts or practices in violation of RCW 19.86.020 *et seq*.

70.     Defendants' unfair and deceptive acts and practices are likely to be, and have been, repeated in exactly the same fashion in a manner that has the capacity to deceive and damage, and has already deceived and damaged, a substantial portion of the public, including but not limited to, consumers and vendors of secure data storage services, and indirectly, members of the public who rely on the confidentiality, security, and integrity of online and other electronic financial transactions, and of data provided for the purposes of such commerce.  There is a substantial public interest in the integrity of secure electronic data storage facilities, and Defendants' unfair and deceptive conduct is capable of repetition and directly threatens that public interest.  Specifically, Defendants' conduct as alleged above grossly undermines the entire electronic data storage industry and public confidence in the ability of recipients and owners of confidential and proprietary data to contract for and maintain such data in economical, centralized, and secure locations.

71.     Defendants' unfair and deceptive acts as alleged above occurred in commerce, in the course of Defendants' business, as part of a pattern of unfair activity, and caused injury to BFG in its business and property in an amount to be proved at trial.

72.     Accordingly, pursuant to RCW 19.86.090, BFG is entitled to injunctive relief, actual and trebled damages, attorneys' fees, and costs of suit.

COMPLAINT (NO. C07-0718) – 18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

### Ninth Claim for Relief:
### Unjust Enrichment and Imposition of Constructive Trust

73.     BFG realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 72 above.

74.     Defendants' activity as alleged above constitutes deceptive, fraudulent, and illegal conduct in the nature of theft, trade secret misappropriation, and fraudulent inducement to contract, among other things.

75.     By virtue of their wrongful conduct, Defendants have been unjustly enriched, illegally receiving money and profits that derive directly or indirectly from BFG's trade secrets or confidential and proprietary business information.  Such money and profits rightfully belong to BFG and in the interests of justice should be returned to BFG.

76.     Upon information and belief, Defendants hold the illegally received money and profits in the form of bank accounts, securities, financial instruments, real property, or personal property that can be located and traced.

77.     Defendants hold, and should be deemed to hold, the money and profits they have illegally received as constructive trustees for the benefit of BFG.

### Tenth Claim for Relief:
### Civil Conspiracy

78.     BFG realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 77 above.

79.     Defendants, and each of them, through the conduct alleged above, willfully and maliciously combined to accomplish the unlawful purpose of misappropriating BFG's trade secrets and confidential business information, entered into an agreement with the specific intent to accomplish that objective, and engaged in conduct in furtherance of that conspiracy.

80.     Alternatively, Defendants, and each of them, willfully and maliciously combined to accomplish the lawful purpose of promoting iWin's business interests by unlawful means, i.e., by means of the misappropriation of BFG's trade secrets and confidential business information.

COMPLAINT (NO. C07-0718) – 19

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Defendants entered into an agreement with the specific intent to employ those unlawful means and engaged in conduct in furtherance of that conspiracy.

81.   As a result of Defendants' unlawful conspiracy, BFG has been damaged in an amount to be proved at trial.

### PRAYER FOR RELIEF

WHEREFORE, BFG respectfully requests that the Court enter judgment against Defendants as follows:

A.   For entry of an Order granting the following preliminary and permanent injunctive relief:

     a.   Enjoining Defendants from making any further attempt to obtain unauthorized access to any confidential data relating to BFG that is or was maintained on computer systems maintained by Macrovision, including information related to BFG's sales, revenues, marketing models, customers, and subscription program;

     b.   Ordering Defendants to disclose to BFG all data relating to BFG that Defendants viewed, copied, downloaded, or otherwise accessed on the Macrovision ORS without authorization from BFG, including for each item of data,

          (i)   the nature of the access (viewed, copied, downloaded, etc.);

          (ii)   the date of the access;

          (iii)   all person(s) who had access and all person(s) who received descriptions, summaries or copies of the information, and the date(s) such person were given access; and

          (iv)   the location of all summaries or copies of the information.

     c.   Ordering Defendants to return to BFG all copies in their possession or custody or within their control of all documents, files, reports, data, and/or

COMPLAINT (NO. C07-0718) – 20

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

all other materials, regardless of their form, that reflect any BFG-related data that Defendants obtained without authorization from any Macrovision computer system, and not to use any such information in the future; and

    d.    Ordering Defendants to make available to BFG's counsel and its agents, for examination and imaging, the hard drives of all computers that at any time were used to store any data obtained without authorization from Macrovision's computer system (such imaged hard drives shall be maintained in the custody of counsel for BFG or its agent, and data stored on such hard drives that is unrelated to this matter or to BFG shall not be shared with BFG employees absent further Order of this Court);

    e.    providing for expedited discovery and preservation of evidence relevant to this matter; and

    f.    providing such other and further injunctive relief as is deemed necessary in light of new facts learned through discovery.

B.    For compensatory damages in an amount to be proved at trial;

C.    For treble damages pursuant to 18 U.S.C. § 1964(c);

D.    For exemplary damages pursuant to RCW 19.108.030(2) and RCW 19.86.090;

E.    For disgorgement of all profits made by Defendants as a result of the acts alleged herein, pursuant to RCW 19.108.030(1);

F.    For attorneys' fees pursuant to 18 U.S.C. § 1964(c) and RCW 19.108.040; and

G.    For such other, further, and additional relief as the Court deems just and proper, including interim relief in the form of a temporary restraining order or preliminary injunction, as may be necessary and appropriate to prevent further damage or injustice.

COMPLAINT (NO. C07-0718) – 21

**Perkins Coie** LLP
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

64693-0003/LEGAL13225711.1

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff BFG demands a trial by jury on all issues triable by jury.

DATED this 8th day of May, 2007

s/ Susan D. Fahringer

Susan D. Fahringer, WSBA No. 21567
Joseph M. McMillan, WSBA No. 26527

SFahringer@perkinscoie.com
JMcMillan@perkinscoie.com

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:   206.359.9000

Michael A. Sussmann
*pro hac vice application pending*
MSussmann@perkinscoie.com

**Perkins Coie LLP**
607 Fourteenth Street N.W.
Washington, D.C.
20005-2011
Telephone: 202.434.1637
Facsimile: 202.654.9127

Attorneys for Plaintiff
Big Fish Games, Inc.

COMPLAINT (NO. C07-0718) – 22

64693-0003/LEGAL13225711.1